

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
*Attorneys at Law*

**WILMINGTON**
RODNEY SQUARE

**NEW YORK**
ROCKEFELLER CENTER

**Karen L. Pascale**
P 302.571.5001
F 302.576.3516
kpascale@ycst.com

October 20, 2016

<u>*Via CM/ECF and Hand Delivery*</u>

The Honorable Sherry R. Fallon
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:   *Boston Scientific Corp., et al. v. Edwards Lifesciences Corp., et al.,*
              C.A. No. 16-275-SLR-SRF

Dear Judge Fallon:

      Pursuant to the Court's October 11, 2016 Order on the parties' Joint Motion for Teleconference to Resolve Protective Order Dispute (D.I. 40) in the above-referenced case, and in anticipation of the combined Discovery Dispute and Review Hearing scheduled for October 25, 2016 at 11:00 a.m. in Courtroom 6C, Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") respectfully submit this letter to address the sole outstanding dispute regarding the terms of a protective order.

      BSC proposes that the definition of "Outside Counsel" in Section 2.13 of the proposed Protective Order include the parties' outside counsel involved in related actions in Europe:

> <u>Outside Counsel of Record (without qualifier)</u>: attorneys and their support staff who are not employees of a party to this action or the California Action and who (i) have appeared in this action or the California Action on behalf of such party or (ii) are employed with a law firm which has appeared on behalf of that party **[*BSC PROPOSAL*: or any of the following law firms: Olswang LLP, Peterreins Schley Patent- und Rechtsanwälte GbR, Bird & Bird LLP, Bird & Bird Aarpi, Eisenführ Speiser Patentanwälte Rechtsanwälte PartGmbB, and Powell Gilbert LLP.] [*EDWARDS PROPOSAL*: Edwards opposes this language.]**

BSC has sued Edwards Lifesciences Corporation ("Edwards") in Germany, the UK, and France for infringement of two European counterparts of the U.S. patent it asserts in this proceeding.

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
October 20, 2016
Page 2

BSC's claims arise from Edwards' foreign sales and U.S. manufacture of its Sapien 3 Transcatheter Heart Valve ("Sapien 3"), which is the same product accused in this case. (*See* Exhibits A and B attached hereto.) Edwards has asserted counterclaims against BSC in this Court and in the European cases arising from BSC's European sales and alleged U.S. manufacture of BSC's Lotus Valve System ("Lotus").[1] (*See* Exhibits C and D attached hereto.) The asserted Edwards patents in Europe are counterparts of the asserted Edwards patents in the U.S.

By including the parties' outside law firms within the definition of Outside Counsel, these lawyers would be able to review the confidential and highly confidential discovery materials exchanged by the parties in this case and provide advice. This advice would ensure that the parties can efficiency manage their litigations and maintain consistent positions across the globe. Edwards opposes these firms being included in the Protective Order.

In *INVISTA North America S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1867345 (D. Del. Mar. 28, 2013) [*hereinafter "INVISTA I"*], this Court permitted foreign counsel in related litigation "to have access to documents designated as 'CONFIDENTIAL INFORMATION' or 'HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY INFORMATION'" in U.S. district court litigation. *Id*. at *1-2. As here, the movant asserted that "considerations of efficiency, conservation of resources and coordination of global litigation strategy among outside counsel warrant such discovery sharing." *Id.* at *1. The Court held that "the reason for the proposed disclosure is both legitimate and one that would promote efficiency—it is meant to allow INVISTA to obtain informed and coordinated legal advice both from its counsel in this case, as well as from the counsel that it and its affiliates have hired in related litigation involving the foreign counterpart to patents-at-issue in this case." *Id*. at *2. The same efficiency would be had in the present case, as BSC's proposal would permit the parties to obtain informed and coordinated legal advice from its U.S. counsel as well as the attorneys involved in the foreign counterpart litigations. For example, the parties could send draft briefs in this case to their European firms for advice on the consistency of the arguments with the European cases.

In a later decision in the same case, this Court emphasized that "courts regularly permit the sharing of confidential information among counsel for related parties in foreign patent litigation, and for understandable reasons: such a ruling permits closely connected corporate entities to avoid taking inconsistent positions in related patent litigation across the globe (while still subjecting the recipients of such information to clear, forceful restrictions on their ability to utilize such documents in foreign litigation or elsewhere)." *See INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, No. 11-1007-SLR-CJB, 2013 WL 1614971, at *2 (D. Del. Apr. 5, 2013) [*hereinafter "INVISTA II"*].

Just as in *INVISTA I*, it would harm BSC if its European counsel were denied access to the materials in this litigation. BSC would be deprived of the efficiencies relied on by the

---

[1] BSC's Lotus is only approved for sale in Europe; it has not yet been approved for sale in the U.S. Edwards, by contrast, has been approved to sell its Sapien 3 in the U.S. and worldwide.

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
October 20, 2016
Page 3

*INVISTA I* court, as well as the ability to confirm that Edwards was not "taking inconsistent positions" in Europe and in the U.S. *INVISTA I*, 2013 WL 1867345, *at* \*4 ("Depriving INVISTA of the efficiencies cited in the Court's Order—for example, denying its Italian counsel the ability to have awareness of INVISTA's legal position taken in United States filings that contain reference to Defendants' confidential information—would constitute a harm.").

Other courts have entered protective orders that allowed foreign counsel to have access to protected information. *See, e.g.*, *Infineon Techs. AG v. Green Power Techs. Ltd*, 247 F.R.D. 1, 3-5 (D.D.C. June 17, 2005) (granting request to modify protective order to provide foreign counsel in related litigation confidential documents obtained in U.S. district court litigation and to permit foreign counsel to submit certain documents to foreign court; "Given that it is more efficient to permit discovery to be shared in a forum litigating similar issues, GPT's motion to modify the protective order should be granted."); *Abbott GMBH & Co., KG v. Centocor Ortho Biotech, Inc.*, Case No. 09–11340–FDS (D.I. 67), slip op. at 2–4 (D. Mass. July 14, 2010) (granting request to modify protective order to allow discovery materials obtain in US district court litigation to be used in related foreign litigation); *Oracle Corp. v. SAP AG*, No. C-07-01658, 2010 WL 545842, at \*1-3 (N.D. Cal. 2010) (granting request to modify protective order to allow discovery materials obtain in US district court litigation to be used in related foreign litigation).

There is no dispute that the information provided in this case would be relevant to the German, UK, and French cases. The accused products are the same, and the patents in Europe are the counterparts of those asserted in this Court. Thus, just as in *Infineon*, Edwards will not suffer any prejudice from BSC's proposal; indeed, BSC's proposal is evenhanded as it applies to foreign litigation counsel of both parties. *See Infineon*, 247 F.R.D. at 3 ("Infineon has also not shown how it would be prejudiced by the proposed modification. Although GPT certainly bears the burden of establishing good cause, Infineon has not offered any real challenge to GPT's argument that these documents would be highly relevant to the German litigation. In fact, Infineon is completely silent on the question of the relevance of the documents. Instead, Infineon focuses on issues of confidentiality, which concededly are very important in this motion. But confidentiality concerns can be allayed by the limited modification, and by putting GPT's German counsel under the terms of the Protective Order.").

The proposed Protective Order in this case is like the one in *INVISTA* in that it "builds in significant protections to vitiate privacy interests and prevent against the inappropriate disclosure or misuse of such information. To that end, the Protective Order requires that the confidential materials not be disclosed or used for any purpose other than that related to the instant United States-based litigation. This type of protection cabins the potential for any unduly negative impact of the disclosure on Defendants." *Id.*

Accordingly, BSC respectfully requests that the Court enter a Protective Order that includes as Outside Counsel the parties' foreign litigation counsel who have been retained in the related European actions. If the Court is inclined to require additional protections, BSC would not oppose a requirement that individuals at the identified foreign law firms must execute the

01:17337914.1

Young Conaway Stargatt & Taylor, LLP
The Honorable Sherry R. Fallon
October 20, 2016
Page 4

"Acknowledgement and Agreement to be Bound" at Exhibit A to the proposed Protective Order, although BSC believes this would be unnecessary.

                                            Respectfully submitted,

                                            */s/ Karen L. Pascale*

                                            Karen L. Pascale (No. 2903)
                                            kpascale@ycst.com

Attachments: Exhibits A - D

cc:  Clerk, U.S. District Court (Via CM/ECF and Hand Delivery)
      Counsel of Record (Via CM/ECF and E-mail)